UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RAMON FABIAN,

                          Plaintiff,

        -against-                                          9:16-CV-0878 (LEK/DEP)

MICHAEL BUKOWSKI, Corrections
Officer, individually and in his official
capacity, *et al.*,

                          Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

In this case, Roman Fabian brings constitutional and state-law tort claims against Michael

Bukowski—a corrections officer Fabian alleges savagely beat him—and Anthony J. Annucci,

Commissioner of the New York State Department of Corrections and Community Supervision

("DOCCS"). Dkt. No. 1 ("Complaint") ¶¶ 1–2, 10–11. Presently before the Court are two

motions: one by Annucci to dismiss the claims against him, Dkt. No. 23 ("Motion to Dismiss);

see also Dkt. Nos. 23-1 ("Memorandum"), 27 ("Opposition"), 29 ("Reply"), and another by

Fabian seeking a default judgment against Bukowski, Dkt. No. 31 ("Default Judgment Motion");

see also Dkt. No. 31-1 ("Default Judgment Memorandum"). For the following reasons,

Annucci's Motion to Dismiss is granted, and Fabian is ordered to provide additional briefing and

materials in support of his Default Judgment Motion.

### II.    BACKGROUND

This lawsuit stems from Fabian's incarceration at Ulster Correctional Facility ("Ulster

C.F."). Compl. ¶ 17. In July 2014—several days after Fabian first arrived at the

facility—Bukowski was conducting a morning head count and yelled at Fabian, telling him to

"shut up." Id. After the head count, Bukowski took Fabian to an area of the prison outside the

view of other inmates and without camera coverage. Id. Bukowski ordered Fabian to face a wall

with his arms outstretched and legs spread open. Id. Then, from behind, Bukowski kicked Fabian

between the legs. Id. Fabian collapsed; despite Bukowski's orders to get up, Fabian had to crawl

back to his cubicle in the dormitory. Id.

Fabian remained on the floor of his cubicle for almost an hour before reporting to the

mess hall for lunch. Id. A sergeant then sent him to the facility's medical unit, which in turn

loaded him into a van and drove him to a hospital in Albany. Id. The attack had ruptured Fabian's

right testicle, a part of which was subsequently removed by doctors in emergency surgery. Id.

¶¶ 2, 17. Because of the attack, Bukowski was eventually charged with misdemeanor assault and

fired from his job with DOCCS. Id. ¶ 10.

Though Bukowski's involvement in the attack is plainly alleged in the Complaint, Fabian

also sued three others: Annucci (Commissioner of DOCCS), Colonel James Hanstein,[1] and

Ulster County Sheriff Paul J. Van Blarcum. Id. ¶¶ 11–12.[2] In attempting to tie them to the attack,

Fabian alleges that Bukowski had beaten other inmates in the past, and that Hanstein and Van

Blarcum were aware of complaints concerning this behavior. Id. ¶ 18. Fabian does not allege that

Annucci was aware of Bukowski's past misconduct, id., but Fabian later alleges that Annucci

failed as a supervisor to prevent this incident and was "aware of widespread beatings of inmates

---

[1]  While Ulster C.F. is a state facility, is seems that Hanstein is head of the corrections division within the Ulster County Sheriff's Department. Administrative Staff, Off. Ulster County Sheriff, http://ulstercountyny.gov/sheriff/administrative-staff (last visited Apr. 18, 2017).

[2]  The Complaint has two paragraphs numbered "12"; this citation refers to both.

by officers" within New York's corrections system. Id. ¶¶ 29–30. The Complaint does not

mention any particular incident that Annucci was aware of, and does not allege that he knew of

past violations committed by Bukowski.

Fabian filed his Complaint in July 2016, Compl., but voluntarily dismissed his claims

against Van Blarcum and Hanstein soon after, Dkt. Nos. 6, 20.[3] Still remaining were Fabian's

claims against Annucci as a supervisor for excessive force, denial of medical care, and

negligence. Compl. ¶¶ 26–40, 52–55. Annucci then moved to dismiss these claims, arguing that

Fabian's claims against Annucci in his official capacity were barred by sovereign immunity, that

he failed to sufficiently plead personal involvement for his individual-capacity claims, and that

the Court should not exercise supplemental jurisdiction over his state-law claims. Mem. at 4–11.

While Annucci moved to dismiss the claims against him, Bukowski did not answer or

otherwise appear in this action, and the clerk noted his default. Dkt. No. 22. Fabian then moved

for a default judgment against Bukowski. Default J. Mot. Fabian's motion, however, asks "for an

inquest to determine" damages, Dkt. No. 31-2 ("Attorney Affidavit") ¶ 9, and does not include a

proposed damages amount or any evidence suggesting what amount of damages would be

appropriate, id.; Default J. Mem. at 13.

III.   **LEGAL STANDARD**

**A. Motion to Dismiss**

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as

---

[3] Though unclear from the docket, it seems likely that Van Blarcum and Hanstein were dismissed because they are Ulster County, rather than DOCCS, employees.

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

### B. Default Judgment

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." Elec. Creations Corp. v. Gigahertz, Inc., No. 12-CV-1423, 2013 WL 3229125, at *3 (N.D.N.Y. June 25, 2013) (quoting Robertson v. Doe, No. 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008)). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" Id. (alteration in original) (quoting Robertson, 2008 WL 2519894, at *3). Second, under Federal Rule of Civil Procedure 55(b)(2), "the party seeking default judgment is

required to present its application for entry of judgment to the court." Id. (quoting Robertson, 2008 WL 2519894, at *3).

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability. . . ." Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974); accord, e.g., Bravado Int'l, 655 F. Supp. 2d at 189–90. "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." United States v. Hill, No. 12-CV-1413, 2013 WL 474535, at *1 (N.D.N.Y. Feb. 7, 2013) (alteration in original) (quoting Overcash v. United Abstract Grp., Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008)). "The burden is on the plaintiff to establish its entitlement to recovery." Bravado Int'l, 655 F. Supp. 2d at 189. "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" Id. at 190 (quoting Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989)).

Under Local Rule 55.2(b), the moving party must submit with its motion for default judgment: (1) a clerk's certificate of entry of default, (2) a proposed form of default judgment, (3) a copy of the pleading to which no response has been made, and (4) an affidavit. L.R. 55.2(b). The affidavit must set forth that: (1) the party against whom judgment is sought is not an infant,

incompetent, or in military service; (2) the party against whom judgment is sought "has defaulted

in appearance in the action"; (3) service was properly effected under Federal Rule of Civil

Procedure 4; (4) the amount sought "is justly due and owing," and no part has been paid; and (5)

"[t]he disbursements sought to be taxed have been made in the action or will necessarily be made

or incurred." L.R. 55.2(a).

## IV.     DISCUSSION

### A.  Annucci's Motion to Dismiss

#### 1.  Sovereign Immunity

Fabian claims to sue Annucci both individually and in his official capacity as

commissioner of DOCCS. Compl. ¶ 11. But Fabian does not seek any injunctive relief, only

requesting money damages for his injuries. Id. at 15. According to Annucci, Fabian's official-

capacity claims must thus be dismissed, since state officials are immune from suit for money

damages in their official capacity. Mem. at 4–5.

Annucci is correct. "To the extent that a state official is sued for damages in his official

capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke

the Eleventh Amendment immunity belonging to the state." Ying Jing Gan v. City of New York,

996 F.2d 522, 529 (2d Cir. 1993); see also Kentucky v. Graham, 473 U.S. 159, 167 (1985) ("The

only immunities that can be claimed in an official-capacity action are forms of sovereign

immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment."). Thus,

Fabian's claims against Annucci in his official capacity are dismissed on sovereign immunity

grounds.

## 2. Personal Involvement in Excessive Force

While unavailable in official capacity suits, money damages can be awarded for constitutional violations when a defendant is sued in her individual capacity. E.g., Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989); Young v. Patrice, 832 F. Supp. 721, 724 (S.D.N.Y. 1993). But to establish individual liability under § 1983, the plaintiff must show that the defendant was personally involved in the deprivation of her rights. E.g., Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). The personal involvement of a supervisor must be rooted in her actions or inaction, and cannot be based solely on her position above the wrongdoer within the chain of command. See, e.g., Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) ("[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*.").

The Second Circuit has listed five ways that a plaintiff can demonstrate a supervisory defendant's personal involvement:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (emphasis omitted) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). Here, because Fabian has not alleged Annucci's direct personal involvement, failure to respond to this particular incident (after all,

Bukowski was fired), or a specific policy or custom at issue, Annucci's liability as a supervisor turns on his failure to respond to previous misconduct by Bukowski. The issues of law on this point are essentially the same whether described as Annucci's deliberate indifference to past violations or gross negligence in responding to these reports. See McLennon v. City of New York, 171 F. Supp. 3d 69, 101–02 (E.D.N.Y. 2016) (noting that both deliberate indifference and gross negligence can be shown when a supervisory defendant was aware of past misconduct but did not act to prevent its repetition).

In order to state a supervisory liability claim on the basis of deliberate indifference, a plaintiff must allege three elements: (1) that the supervisor had a duty to intervene and prevent the constitutional violation, (2) "that the supervisor 'ha[d] actual or constructive notice of unconstitutional practices' carried out by his supervisees—which notice triggered his duty to intervene—yet deliberately failed to take such action, thereby breaching this duty," and (3) that this failure proximately caused the plaintiff's injury. Murphy v. N.Y. Racing Ass'n, 76 F. Supp. 2d 489, 500 (S.D.N.Y. 1999) (quoting Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989)). In other words, the plaintiff must show "that the defendant-supervisor was aware of a subordinate's prior substantial misconduct but failed to take appropriate action to prevent future similar misconduct before the plaintiff was eventually injured." Raspardo v. Carlone, 770 F.3d 97, 117 (2d Cir. 2014).

While Fabian alleged that Sheriff Van Blarcum and Colonel Hanstein were alerted through grievances and other complaints that Bukowski battered inmates at Ulster C.F., Compl. ¶ 18, he voluntarily dismissed his claims against both of these former defendants, Dkt. Nos. 6, 20. Only two paragraphs in the Complaint speak to what Annucci knew or did: a list of

conclusory allegations (such as that Annucci "assigned officers with demonstrable propensities for excessive force"), and the claim that Annucci was "aware of widespread beatings of inmates by officers and the use of excessive force." Id. ¶¶ 29–30. These paragraphs do not assert that or explain why Annucci knew or should have known of Bukowski's prior bad acts. Id.

These allegations fail to state a claim for supervisory liability. See, e.g., White v. Clark, No. 12-CV-986, 2012 WL 5877160, at *9–10 (N.D.N.Y. Nov. 20, 2012) (dismissing supervisory claims when the complaint merely alleged "in wholly conclusory fashion that [the defendants] exhibited 'deliberate indifference' to the staff misconduct"); Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (dismissing conclusory allegations of deliberate indifference and gross negligence). Accordingly, Fabian's supervisory excessive-force claim against Annucci must be dismissed. If Fabian wishes to continue against Annucci, he must move to amend his Complaint to include specific allegations showing Annucci's prior knowledge and failure to respond to abuses by Bukowski or other officers at Ulster C.F. See Murphy, 76 F. Supp. 2d at 501–04 (analyzing the duty to intervene based on the quantity and details of past incidents); see also Cole v. N.Y. State Dep't of Corr. & Cmty. Supervision, No. 14-CV-539, 2016 WL 5394752, at *27 (N.D.N.Y. Aug. 25, 2016) ("To be sufficient before the law, a complaint [alleging supervisory liability] must state precisely who did what and how such behavior is actionable under law." (quoting Hendrickson v. U.S. Attorney Gen., No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994), aff'd, 40 F.3d 1236 (2d Cir. 1994))), adopted by 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016).

### 3. Personal Involvement in Medical Care

For similar reasons, the Court must also dismiss Fabain's claim against Annucci for

denial of medical care. All of Fabian's allegations for the denial of medical care are conclusory

and fail to articulate any decision or policy by Annucci that contributed to a delay in Fabian's

treatment. Compl. ¶¶ 34–40. Instead, Fabian alleges that Annucci was generally aware of the

inadequate medical care at Ulster C.F. and that "inadequate medical treatment [was] provided to

the victims of beatings," without pointing to a particular instance of which Annucci was aware or

even articulating what made the medical treatment inadequate. Id. ¶ 37.

Such conclusory allegations do not state a claim for supervisory liability. See, e.g., Swain

v. Doe, No. 04-CV-1020, 2009 WL 3151183, at *5 (D. Conn. Sept. 24, 2009) (granting summary

judgment for the corrections commissioner for failure to show personal involvement in the delay

of medical treatment); Sereika v. Patel, 411 F. Supp. 2d 397, 403–04 (S.D.N.Y. 2006) (noting

that plaintiffs must allege personal involvement with an alleged delay in medical treatment);

Anderson v. Phoenix, No. 95-CV-4605, 1997 WL 362255, at *3 (S.D.N.Y. June 27, 1997)

(same); Webb v. Jackson, No. 92-CV-2149, 1994 WL 86390, at *3 (S.D.N.Y. Mar. 16, 1994)

(same). Accordingly, Fabian's denial-of-medical-care claim against Annucci must be dismissed,

but again, the Court will let Fabian move to amend his Complaint in order to address this

problem.

Any proposed amendment of this claim should demonstrate how Annucci was personally

involved with the delay in Fabian's medical care. Additionally, though Annucci did not move to

dismiss on this ground, any proposed amended complaint should also include allegations

showing how the alleged delay in medical care contributed to or worsened Fabian's injuries. See,

e.g., Frith v. City of New York, 203 F. Supp. 3d 386, 390 (S.D.N.Y. 2016) (noting that to state a claim for delay in medical treatment, a plaintiff must "allege that the delay itself caused or exacerbated" the injury, and that the Second Circuit has limited Eighth Amendment delay claims to extraordinary circumstances).

### 4. Supplemental Jurisdiction

Because subject matter jurisdiction in this case is based on a federal question, Compl. ¶ 3 (citing 28 U.S.C. § 1331), the Court's jurisdiction over Fabian's state-law claims comes from supplemental jurisdiction, see 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) (same); see also Compl. ¶ 4 (expressly invoking supplemental jurisdiction over Fabian's state-law claims). The question here is whether the Court should continue to exercise supplemental jurisdiction over Fabian's state-law claims now that it has dismissed all of his federal claims against Annucci. Mem. at 9.

The supplemental jurisdiction statute allows courts to decline supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The continued exercise of supplemental jurisdiction is within the district court's discretion, the exercise of which requires the court to balance "judicial economy, convenience, fairness, and comity." Fei Hang Chen v. Jing Fong Restaurant, Inc., 582 F. Supp. 2d 602, 603 (S.D.N.Y. 2008) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7

11

(1988)). But the Supreme Court has given significant guidance on this question when all federal

claims are dismissed at the outset of a case. "[W]hen the federal-law claims have dropped out of

the lawsuit in its early stages and only state-law claims remain, the federal court should decline

the exercise of jurisdiction by dismissing the case without prejudice." Carnegie-Mellon, 484 U.S.

at 350 (footnote omitted); see also, e.g., Bascom v. Fried, 116 F. App'x 300, 302–03 (2d Cir.

2004) (per curiam) (affirming the dismissal of supplemental state-law claims when all the federal

claims were dismissed under Rule 12(b)(6)); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir.

1998) ("In general, where the federal claims are dismissed before trial, the state claims should be

dismissed as well."). Because the Court is dismissing all the federal claims against Annucci, it

declines to exercise supplemental jurisdiction. Accordingly, Fabian's state-law claims against

Annucci are dismissed without prejudice to refiling in state court.

If Fabian successfully amends his Complaint, the Court will again exercise supplemental

jurisdiction over any state-law claims that are not dismissed on other grounds. Furthermore,

because the Court finds that the exercise of supplemental jurisdiction would be inappropriate

without a surviving federal claim, it does not reach Annucci's argument that he is immune from

suit on state-law claims under New York Corrections Law section 24. Mem. at 9–10. Annucci

may renew this argument in response to any motion to amend Fabian's Complaint.

### B. Fabian's Motion for Default Judgment

Finally, the Court turns to Fabian's motion for default judgment against Bukowski.

Default J. Mot. While the affidavit supporting Fabian's motion attests that Bukowski was

properly served but failed to appear in this action, and meets most of the Local Rules' other

requirements for default judgment motions, Att'y Aff.; L.R. 55.2, the motion does not request

judgment for a specific amount in damages, Att'y Aff. ¶ 9; Default J. Mem. at 13. Instead, Fabian requests that the Court enter default judgment against Bukowski now, and then hold "an inquest to determine the amount of [Fabian's] damages as against [Bukowski]." Att'y Aff. ¶ 9.

The Second Circuit has held that "default judgment cannot be entered until the amount of damages has been ascertained." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 97 (2d Cir. 1993); accord, e.g., Peterson v. Syracuse Police Dep't, 467 F. App'x 31, 34 (2d Cir. 2012) (per curiam), vacating sub nom. Peterson v. Lester, No. 09-CV-106 (N.D.N.Y. Oct. 19, 2010) (Kahn, J.); Capital One, Nat'l Ass'n v. 48-52 Franklin, LLC, No. 12-CV-3366, 2013 WL 3972698, at *7 (S.D.N.Y. July 29, 2013), adopted by 2013 WL 4457367 (S.D.N.Y. Aug. 21, 2013). Because Fabian included no evidence or argument as to the appropriate amount of damages, the Court cannot enter default judgment against Bukowski at this time.

Furthermore, while Fabian requested an inquest to prove the amount of damages, Att'y Aff. ¶ 9, he seems to be relying on the New York state procedure for default judgment, see, e.g., Bowdren v. Peters, 617 N.Y.S.2d 66, 67 (App. Div. 1994) (requiring an inquest to prove damages after default when the submitted materials could not be used to calculate the amount owed); cf. N.Y. C.P.L.R. 3215(b) (establishing procedures for determining damages after default judgment). This Court will not hold a hearing to determine damages unless it doubts the damages evidence submitted by the plaintiff, or unless there is no other way to support the claimed amount. See Fustok, 873 F.2d at 40 (finding that hearings for determining damages after default are not required so long as the evidence presented "provide[s] a sufficient basis from which to evaluate the fairness of the proposed sum").

13

If Fabian still wishes to obtain a default judgment against Bukowski, he must file additional briefing, along with any required affidavits or other evidence, showing his entitlement to a specific amount of damages. These additional filings should permit the court to assess the fairness of Fabian's proposed amount, and should also attest that the amount is justly due, that no part has been paid, and that any costs Fabian wishes to tax against Bukowski have been or necessarily will be made in the course of this lawsuit. L.R. 55.2(a).

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Annucci's Motion to Dismiss (Dkt. No. 23) is **GRANTED**, and Fabian's claims against Annucci are **DISMISSED**; and it is further

**ORDERED**, that if Fabian wishes to continue against Annucci, he must, within **thirty (30) days** of this Memorandum-Decision and Order, move to amend his Complaint in order to address the deficiencies identified herein; and it is further

**ORDERED**, that if Fabian does not move to amend within the time allowed, Annucci shall be terminated as a defendant in this case without further order of the Court; and it is further

**ORDERED**, that, within **thirty (30) days** of this Memorandum-Decision and Order, Fabian shall file a supplemental memorandum of law, not to exceed fifteen (15) pages, along with any required affidavits and other materials, in support of a proposed damages calculation against Bukowski; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      April 25, 2017
               Albany, New York

_____

Lawrence E. Kahn
U.S. District Judge